**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

L&M COMPANIES, INC.,

    L&M,

v.

    Case no. 2015-cv-81006
    Judge: Robin Rosenberg
    Mag. Judge: Dave Lee Brannon

MICHAEL J. NAVILIO,

    Navilio.

_____/

## MOTION TO DISMISS

    Through his undersigned counsel, Michael J. Navilio moves for this action to be dismissed, and in support thereof he states:

    1.    The issues in this case have already been addressed in Uesugi Farms, Inc., *et. al.* v. Michael J Navilio & Son, Inc., *et al.*, which was filed in the United States District Court for the Northern District of Illinois and assigned case number 15-cv-1724, Hon. John Darrah presiding.  The Illinois case predates the instant case before this court.

    2.    The Illinois case alleges PACA violations against Michael J Navilio & Son, Inc. ("the company"), Mr. Navilio, and the current officers of the company.  A number of PACA creditors were, as a matter of course, allowed to intervene, as the PACA trust is a non-segregated floating trust and thus requires a *pro rata* distribution of PACA trust funds to PACA trust creditors (beneficiaries) from a delinquent company.  L&M Companies, Inc. ("**L&M**") has thus far chosen not to intervene in that case.

    3.    Mr. Navilio, was also a defendant in the Illinois case, under the theory that he was personally liable to PACA creditors.  While persons in a position to control the PACA trust may be held personally liable for a breach of the trust, Mr. Navilio put the facts set forth below before

the Illinois court, and moved for both summary judgment and dismissal. Upon consideration, the Illinois court dismissed Mr. Navilio from the action.

4. L&M is well aware of that action, and before filing suit here, L&M's attorney referenced it in correspondence to Mr. Ordower, one of Mr. Navilio's attorneys.

5. Instead of joining in the ongoing action in Illinois, where L&M's claims might be satisfied, L&M chose to file suit here, on the apparent hope that Mr. Navilio's current homestead was purchased with PACA funds.

6. Moderate investigation (simply reading the filings in the Illinois case) would have shown that Mr. Navilio, when he retired and sold all of his stock in the company, paid $200,000 to the company expressly for the purpose of it satisfying its PACA obligations. Further investigation would have showed that while Mr. Navilio did purchase a property in 2014, he had previously sold a more expensive property (which funded the purchase of his new homestead.)

7. Mr. Navilio is approaching his 94th birthday, is in ill-health, and has retired from the produce industry. Any subsequent mismanagement of the company he successfully ran for 45 years is not to be laid at his door. This suit has caused him considerable distress and borders on harassment and forum shopping.

8. Attached are the documents Mr. Navilio submitted to the Illinois court, showing he divested himself of any control of the company before L&M's debts arose and left the company with the PACA trust fully funded. These documents are: his resignation from the company ("Exhibit A"); the Amendment to Stock Purchase Agreement setting forth the terms of the transaction ("Exhibit B"); the Assignment of the Shares of Stock ("Exhibit C"); a page of the tax return he filed, reporting a disposition of all of the shares of the company during the year 2013 ("Exhibit D"); and his Affidavit attesting to the same ("Exhibit E").

**WHEREFORE,** Michael Navilio respectfully requests this matter be dismissed.

**Certificate of Service**

I hereby certify having served a copy of this motion by CM/ECF on November 5, 2015

to: Robert Goldman, Esq., at Robert@goldmanlaw.com

                                           A Joseph Stern, P.A.,
                                           Counsel for Michael Navilio

                                           By: /s/ Joe Stern
                                           Joseph Stern, Esq., Fla. Bar no. 30902
                                           1911 NW 150th Ave., #203
                                           Pembroke Pines, Florida 33028
                                           Telephone: (954) 556-4822
                                           Facsimile: (954) 556-4822
                                           Email: stern@ajslegal.com

# EXHIBIT A

# MICHAEL J. NAVILIO & SON, INC.

## RESIGNATION

I, Michael J. Navilio, hereby resign as an officer and director of Michael J. Navilio & Son, Inc.

Dated: September 1, 2013

_____
Michael J. Navilio

EX A

October1trs2013

# EXHIBIT B

SEP-25-2013 14:59 From:OGDEN+ORDOWER       3124410624        To:15614820973         P.2/3

# AMENDMENT TO
# STOCK PURCHASE AGREEMENT

THIS AMENDMENT is made by and between Michael J. Navilio as Seller and James Leo Navilio, Patti Navilio, 5420 Cermak Rd II LLC, as Buyers and James Thomas James LLC ("JTJ"), as former contract buyers.

WHEREAS, Seller is the shareholder of one hundred (100%) percent of the shares of Michael J. Navilio & Son, Inc., ("Company"); and

WHEREAS, James Thomas James LLC entered into an agreement for purchase and sale of stock of the Company which contract was not fully performed by either side and which has now been cancelled; and

WHEREAS, the Buyers are desirous of purchasing all of the shares of the Company, and the Seller wishes to sell all of the shares provided that all of the supplier-creditors are paid simultaneously with the closing or shortly thereafter.

NOW, THEREFORE, in consideration of the mutual promises contained herein, the parties agree as follows:

1. JTJ acknowledges that it did not perform its purchase obligations in that it failed to deposit all of the purchase price and therefore has forfeited all of the sums heretofore deposited to the Company.

2. All of the shares of stock of the Company shall be sold to the Buyers instead of JTJ in the following proportions:

   a. One-third to James Leo Navilio;
   b. One-third to Patti Navilio;
   c. One-third to 5420 Cermak Rd II LLC

3. The shares shall be transferred on October 1, 2013, but payment of the purchase price shall be deferred until such time as the Company earns a cumulative profit of Fifty Thousand ($50,000) Dollars for the period commencing October 1, 2013 and ending at the end of any month thereafter. Profit shall be calculated excluding any executive bonuses, salaries or other perks in excess of those presently paid to company executives. Buyers shall execute a note requiring payment thirty (30) days after the said cumulative profit is achieved.

4. Presently the Company is indebted to various suppliers of perishable agricultural commodities ("PACA creditors"). Prior to closing date, Seller agrees to deposit Two Hundred Thousand ($200,000) Dollars to the Company in return for newly issued stock of the Company which shall be issued in compliance with Section 1244 of the Internal


EX B

Revenue Code. The newly issued shares are to be included in the sale of all of the Company shares to Buyers.

Buyers and the Company agree that all of the PACA creditors existing on October 1, 2013 shall be paid in full within fourteen (14) days after the $200,000 is deposited, and the said $200,000 shall be held in trust for payment of said existing PACA Creditors and disbursed only for said purpose until all existing PACA debts are satisfied in full.

5. The Buyers hereby join into this Agreement.

Dated: 9/3/2013

SELLER:

_____
Michael J. Navilio

BUYERS:

_____
James Leo Navilio

_____
Patti Navilio

COMPANY:
MICHAEL J. NAVILIO & SON, INC.,
an Illinois corporation

By: _____
Michael J. Navilio, President

5420 CERMAK RD II LLC

By: _____
Jim Koulouris

By: _____
Thomas Koulouris

FORMER CONTRACT BUYER:
JAMES THOMAS JAMES LLC

By: _____
James Leo Navilio

By: _____
Jim Koulouris

By: _____
Thomas Koulouris

-2-

NAVILIO/SALEOFBUSINESS/amendmenttostockpurchaseagr-092513

# EXHIBIT C

Nov.03.2013 02:32

To:15614820973 P.2/3

OCT-10-2013 13:07 From:OGDEN+ORDOWER 3124410524

## ASSIGNMENT SEPARATE FROM CERTIFICATE

Michael J. Navilio does hereby assign to the following transferees all of his shares of common stock of Michael J. Navilio & Son, Inc. fka Michael J. Navilio, Inc. which shares are one hundred (100%) percent of the total outstanding shares of said Company. The transferees are as follows:

| Transferee | Shares |
|---|---|
| James L. Navilio | 15,000 |
| Patti Navilio | 15,000 |
| 5420 Rd Cermak II LLC | 15,000 |

The shares are presently represented by the following certificates:

| Certificate No. | Dated | Number of Shares |
|---|---|---|
| 8 | July 8, 1999 | 3,000 |
| 15 | November 28, 2005 | 8,000 |
| 16 | June 1, 2011 | 24,000 |
| 17 | September 27, 2013 | 10,000 |

Dated: October 1, 2013

_____
Michael J. Navilio

### ACCEPTANCE

James L. Navilio hereby accepts the transfer of the above-referenced stock

_____
James L. Navilio

### ACCEPTANCE

Patti Navilio hereby accepts the transfer of the above-referenced stock

_____
Patti Navilio

### ACCEPTANCE

5420 Cermak Rd II LLC hereby accepts the transfer of the above-referenced stock

By: _____  By: _____
James Koulouris        Thomas Koulouris

NAVILIO/SALE/assignment.minutes-100813

EX C

# EXHIBIT D

Form 8949 (2013)     Attachment Sequence No. **12A**    Page **2**

Name(s) shown on return. (Name and SSN or taxpayer identification no. not required if shown on other side.)  
MICHAEL J & PATRICIA S NAVILIO

Social security number or taxpayer identification number  
REDACTED

Most brokers issue their own substitute statement instead of using Form 1099-B. They also may provide basis information (usually your cost) to you on the statement even if it is not reported to the IRS. Before you check Box D, E, or F below, determine whether you received any statement(s) and, if so, the transactions for which basis was reported to the IRS. Brokers are required to report basis to the IRS for most stock you bought in 2011 or later.

**Part II**    **Long-Term.** Transactions involving capital assets you held more than one year are long term. For short-term transactions, see page 1.

**Note.** You may aggregate all long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS and for which no adjustments or codes are required. Enter the total directly on Schedule D, line 8a; you are not required to report these transactions on Form 8949 (see instructions).

You must check Box D, E, or F below. Check only one box. If more than one box applies for your long-term transactions, complete a separate Form 8949, page 2, for each applicable box. If you have more long-term transactions than will fit on this page for one or more of the boxes, complete as many forms with the same box checked as you need.

- ☐ **(D)** Long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS (see Note above)
- ☒ **(E)** Long-term transactions reported on Form(s) 1099-B showing basis was not reported to the IRS
- ☐ **(F)** Long-term transactions not reported to you on Form 1099-B

| 1 (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Yr., mo., day) | (c) Date sold or disposed (Yr., mo., day) | (d) Proceeds (sales price) (see instructions) | (e) Cost or other basis. See the Note below and see Column (e) in the separate instructions | (f) Code(s) from instructions | (g) Amount of adjustment | (h) Gain or (loss). Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|---|---|---|
| MB FINANCIAL INC | 2005-07-25 | 2013-08-26 | REDACTED | REDACTED | | REDACTED | REDACTED |
| MORGAN STANLEY LT NON-COVERED | 2012-01-01 | 2013-01-23 | REDACTED | REDACTED | | REDACTED | REDACTED |
| MORGAN STANLEY LT NON-COVERED | 2012-01-01 | 2013-12-31 | REDACTED | REDACTED | | REDACTED | REDACTED |
| MICHAEL J NAVILLO INC | 1970-01-01 | 2013-11-30 | | 242,000 | | | (242,000) |

EX D

**2 Totals.** Add the amounts in columns (d), (e), (g), and (h) (subtract negative amounts). Enter each total here and include on your Schedule D, line 8b (if **Box D** above is checked), **line 9** (if **Box E** above is checked), or **line 10** (if **Box F** above is checked) . . . ▶    2,940,846    3,521,163       (580,317)

**Note.** If you checked Box D above but the basis reported to the IRS was incorrect, enter in column (e) the basis as reported to the IRS, and enter an adjustment in column (g) to correct the basis. See Column (g) in the separate instructions for how to figure the amount of the adjustment.

EEA      Form 8949 (2013)

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UESUGI FARMS, INC., et al.
Plaintiff,

v.

MICHAEL J. NAVILIO & SON, INC., an
Illinois corporation, et al.

Defendants.

Case No. 1:15-cv-1724
Hon. John Darrah
Mag. Judge Finnegan

**DECLARATION OF MICHAEL J. NAVILIO, defendant, IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I, Michael J. Navilio, declare and state as follows:

1. My name is Michael J. Navilio.

2. I was born on December 5, 1921.

3. I presently reside at 21198 Falls Ridge Way, Boca Raton, Florida, and have been a permanent resident of the State of Florida for some years.

4. My entire working life after I was discharged from the armed forces has been in the produce industry.

5. Toward the end of 1969 I formed a company known as Michael J. Navilio, Inc. to engage in the wholesale produce and commission merchant business on South Water Market in Chicago, Illinois.

6. I was employed by that corporation as a salesman and executive from the time of its creation until September 1, 2013.

7. My son James L. Navilio was also employed by the company and at some time during the existence of the company was a shareholder. The name of the company was changed to Michael J. Navilio & Son, Inc. in 2003.

8. On September 1, 2013, I resigned as an officer and director of the company. A copy of my written resignation is attached hereto as Exhibit 1 (and was attached as Exhibit 1 to the Answer filed on my behalf in this matter).

9. In September 2013, I was the sole shareholder of the company and was negotiating to sell the company to my son James who was backed by some partners. In the fall of 2013 my son James brought a contract to me providing for the purchase of the company by James and some partners of his. I accepted the offer, but the transaction was never closed, and an alternative arrangement was agreed to on September 30, 2013. That final agreement was embodied in an Amendment to the Stock Purchase Agreement is attached hereto as Exhibit 2 (and was attached as Exhibit 2 to the Answer filed on my behalf in this matter).

10. Paragraph 4 of said Amendment provided for me to contribute sufficient funds for all PACA creditors of the company to be paid, and buyers agreed to pay said creditors within fourteen (14) days of my deposit of Two Hundred Thousand ($200,000) Dollars to the company.

11. I made the Two Hundred Thousand ($200,000) Dollar deposit to the company as provided in said Amendment.

12. On October 1, 2013, I transferred all of my shares of stock of the company to the buyers as provided in the Amendment. A copy of the Assignment of the shares of stock is attached hereto as Exhibit 3 (and was attached as Exhibit 3 to the Answer filed on my behalf in this matter).

13. The minutebook for the corporation was turned over to the new owners immediately after the transfer of the stock.

14. I filed a tax return for 2013 showing the sale of my stock. A copy of the page of my tax return showing that sale is attached hereto as Exhibit 4 (and was attached as Exhibit 4 to the Answer filed on my behalf in this matter).

15. After my resignation, I did not participate in management of the company and I did not sign any corporate reports to the Secretary of State of Illinois.

16. I have since learned that an annual report was apparently filed after my resignation naming me as the president and Dean Kennelly as secretary of the corporation. That report was not signed nor authorized by me. I had resigned as president, and Dean Kennelly was discharged from employment in 2012, about a year prior to my resignation and was no longer secretary of the corporation. The Secretary of State also shows my address at 111 E. Chestnut, Unit 50A, Chicago, where I have not lived for many years. It is my recollection that the procedure by the Secretary of State of Illinois is to send an annual report form containing the information provided to the Secretary of State for the prior year and that just signing the form by any officer and paying the requisite fee causes the Secretary of State to show the same information on its website as was done the prior year. I believe that this filing was inadvertent.

I declare under penalty of perjury under the laws of the State of Florida and Illinois and the United States of America that the foregoing is true and correct.

Executed this 12th day of March, 2015 in Boca Raton, Florida.

_____
Michael J. Navillo

-2-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UESUGI FARMS, INC., et al.<br>Plaintiff,<br><br>v.<br><br>MICHAEL J. NAVILIO & SON, INC., an Illinois corporation, et al.<br><br>Defendants. | Case No. 15-1724<br>Hon. John Darrah<br>Mag. Judge Finnegan |

## SUPPLEMENT TO MOTION FOR SUMMARY JUDGMENT

Defendant MICHAEL J. NAVILIO by and through his attorneys Mark R. Ordower PC hereby supplements his Motion for Summary Judgement by the follow statement from attorney Mark Ordower:

1. After filing and presenting the said motion, I received copies of Annual Reports for the fiscal years 2013 and 2014 for Michael J. Navilio & Son, Inc.("Company") certified by the Secretary of State of Illinois, copies of which are attached as Exhibit A.
2. The 2013 report is dated January 2, 2014 and shows James Navilio as president and Patricia Navilio as Secretary and Director. It does not show Michael J. Navilio as an officer or director. The 2014 report shows the same officers and Thomas Kolouris as director, but does not show Michael J. Navilio as officer or director.
3. I called the Secretary of State to ask that their website be corrected and was informed that the annual report must say "amended" or the prior year information is carried forward.
4. The Motion For Summary Judgement is based on the fact that Michael J. Navilio resigned as officer and director and sold all his shares of the Company in 2013. The above statement supports the Motion.

WHEREFORE, Defendant Michael J Navilio asks that judgment be entered in his favor and that he be dismissed from this proceeding.

Dated: April 1, 2015           MICHAEL J. NAVILIO

By:s/Mark R. Ordower
One of its attorneys
Mark R. Ordower, P.C.
Attorney for Michael J. Navilio
333 S. Desplaines, #207
Chicago, Illinois  60661
(312) 441-0620
mark@ogdenpartners.com